111 F.3d 138
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joyce I. OLDFATHER, individually and as Representative of a
Bondholder class; Edwin Bertrand, individually
and as a Representative of a Bondholder
class, Plaintiffs-Appellees,
v.
CIGNA INSURANCE COMPANY, fka INA Underwriters Insurance
Company, Defendant-Appellant.
 No. 96-15047.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1997.
Decided April 22, 1997.
 
 Before: GOODWIN, BRUNETTI, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 CIGNA Insurance Company appeals the district court's order granting partial summary judgment for two classes of bondholders who had invested in industrial revenue bonds for two health care facilities. The court found that coverage existed for stipulated $23 million judgments in the underlying class actions under a professional liability policy issued by CIGNA to the law firm of Guren, Merritt, Feibel, Sogg & Cohen ("Guren"). We reverse the district court's decision and grant summary judgment in favor of the appellant.[1]
 
 
 3
 The district court erroneously held that Robert Blattner's conduct at the Guren firm constituted an "act, error or omission" sufficient to trigger coverage under Guren's insurance policy issued by CIGNA.
 
 
 4
 The bondholders initially filed suit against Blattner, his then-current law firm, Benesch, Friedlander, Coplan & Arnoff ("Benesch"), and others for losses arising out of the default on bonds issued to finance two health care facilities. One cause of the default, according to the bondholders, was the failure to obtain life care permits for the projects.
 
 
 5
 The bondholders relied upon "Official Statements" issued by Benesch in electing to invest in the facilities. After both bond projects failed, the bondholders claimed that the official statements prepared by Blattner neglected to disclose the need for and the absence of life care permits. The bondholders now look to CIGNA for coverage for the bond failure under the company's professional liability policy issued to Guren, the law firm where Blattner began work on the bond projects.
 
 
 6
 As the district court noted, "[t]he parties agree that the dispositive coverage issue is whether [Blattner] committed an 'act, error or omission' which triggered coverage under the Guren, Merrit policy." The bondholders stated on appeal, "[t]he basic thrust of the suits ... was [Blattner's] alleged breaches of duties of care owed as lead bond counsel, including his failure to obtain life care permits as required by Arizona law." In essence, the bondholders contend that Blattner's continuous acts, starting with preliminary discussions at Guren and ending with the issuance of the disclosure statements at Benesch, were sufficient to incur coverage under Guren's policy with CIGNA.
 
 
 7
 The insurance policy issued to Guren states that CIGNA is required:
 
 
 8
 To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages as a result of claims first made against the Insured or any person for whose acts the Insured is legally liable:
 
 
 9
 a) by reason of any act, error or omission in professional services rendered or which should have been rendered by the Insured or the Insured's employees....
 
 
 10
 The bondholders' summary judgment motion claimed that Guren's policy provided coverage for Blattner's actions on the ill-fated bonds while at the firm and the district court agreed.
 
 
 11
 However, the appellees do not contend that Blattner issued the Official Statements which failed to include the life care requirements until after he left Guren. The complaint failed to identify any conduct by Blattner that created liability under Guren's policy; nor have the bondholders added additional allegations on summary judgment to bolster their contention. This deficiency is fatal to the bondholders' case. They attempt to assign liability for Blattner's performance of legal services at one law firm which eventually resulted in allegedly faulty documents issued by a second law firm. Without evidence that Blattner committed some liability-creating "act, error or omission" while at the Guren firm, the bondholders simply have no claim. We cannot equate the liability-creating act of issuing a disclosure statement with the preliminary acts of discussing the requirements for such a document.
 
 
 12
 This case is predicated upon Blattner's failure to disclose that the project required life care permits. Blattner's "act, error or omission" could not occur until he failed to make the necessary disclosure in the Official Statements, an event which occurred after he left the Guren firm. Additionally, Blattner prepared, signed, and delivered opinion letters on Benesch firm letterhead attesting to the validity of the bonds and their status, and the bondholders received copies of these opinion letters. Regardless of Blattner's culpability, the Guren firm cannot be held liable for actions undertaken after Blattner left their employ; necessarily, the bondholders' claim must fail.
 
 
 13
 Alternatively, the bondholders argue that Endorsement 7 of the policy expanded coverage to include Blattner's actions after he left Guren because of the "arising out of" language. This contention also fails. Endorsement 7's plain language clearly does not expand the scope of the coverage beyond the original policy:
 
 
 14
 Coverage will be provided according to the applicable terms, conditions and exclusions of this policy for all claims first made after the termination of the Policy period, arising out of any act, error, or omission ... which took place prior to the end of the Policy period and were caused by the Insured or any other person for whose act, errors or omissions the Insured is legally responsible, and are otherwise covered by the Policy.
 
 
 15
 Use of Endorsement 7 does not advance the bondholders' argument beyond their primary contention that Blattner acted illegally while at Guren. Appellees present no case law to the contrary and any other interpretation of the language is untenable.
 
 
 16
 Thus, the district court erred not only by granting summary judgment for the bondholders, but in failing to grant summary judgment for CIGNA.
 
 
 17
 SUMMARY JUDGMENT FOR APPELLEES REVERSED; SUMMARY JUDGMENT FOR APPELLANT GRANTED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This case was reassigned to Judge Silver after the bondholders prevailed on their summary judgment motion. Prior to trial on the remaining issues, Judge Silver certified the case for appeal to this court pursuant to 28 U.S.C. § 1292(b)